Andrew W. Smith and Florence A. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 46032.
United States Tax Court
T.C. Memo 1955-42; 1955 Tax Ct. Memo LEXIS 297; 14 T.C.M. (CCH) 146; T.C.M. (RIA) 55042; February 17, 1955
*297 Jasper C. DeDobbeleer, Esq., Freitas Building, San Rafael, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined a deficiency in income tax for the year 1950 in the amount of $1,539.54. The only question for decision is whether a loss sustained by petitioners in 1950 is deductible as a non-business bad debt under section 23(k)(4) of the Internal Revenue Code of 1939 rather than a bad debt under section 23(k)(1). Findings of Fact The stipulated facts are so found and the stipulation is included herein by reference. Andrew W. Smith and Florence A. Smith are husband and wife. They filed a joint return for the year 1950 with the collector of internal revenue at San Francisco, California. During the year 1947, Andrew was a colonel in the United States Air Force stationed at Hamilton Air Force Base. He was retired from active service on August 31, 1948 after over thirty years of service. While in the Air Force Andrew was employed in a medical administrative capacity. He made the military service a career. Due to a shortage of trained medical administrative *298 officers in 1948, Andrew was requested to and did continue his military career on a year to year basis. This additional employment was voluntary. On November 1, 1947, Signe Miller assigned to Andrew and his wife a lease of the hotel premises known as "Modern Hotel." The lease was dated March 29, 1946, and ran for a period of five years, April 1, 1946 to March 31, 1951. It provided for a minimum rental of $275 per month with increases in rent based on a price index. On November 1, 1947, the petitioners, Georgia C. Allum and Margery E. Bickle entered into an agreement which recited that petitioners transferred the furniture of Hotel Modern to Georgia C. Allum and Margery E. Bickle. Said instrument was designated on its face as a "Conditional Sales Contract." Georgia C. Allum and Margery E. Bickle gave petitioners their note for $20,135.65, which note bears the date of November 1, 1947. A sublease of the hotel premises was also given to Mrs. Allum and Mrs. Bickle on the same day. The sublease provided for a period of forty-one months, the balance of the period remaining on the original five year lease. The sublease also provided for a payment of $19,500 at the rate of $475.62 per month. *299 The note given by Georgia C. Allum and Margery E. Bickle was in the amount of $20,135.65. It was in excess of the $19,500 figure because the petitioner had loaned to them additional sums to get started. The note called for six per cent interest and it was provided that if the interest payments were not made at the prescribed times such unpaid amounts would be added to principal. In the early months of 1950, Georgia C. Allum and Margery E. Bickle became financially unable to pay either the full rent required under the sublease or to make any further payments of interest or principal to petitioners. Georgia C. Allum and Margery E. Bickle, being in default under the terms of their note to petitioners and unable to make any further payments on the debt, either of principal or interest, requested petitioners to salvage what they could from any and all of the remaining assets and to apply the same against the debt they owed petitioners. Accordingly, petitioners sold all remaining assets for $9,000 and applied this sum against the indebtedness. The sum thereafter and still remaining unpaid is $7,970.28. The loss involved in this case stems from the transactions relating to the hotel *300 furniture described above. During 1950 Andrew was still on active duty with the Air Force and much of that year was in sick status. Margery E. Bickle, during the years 1947 to 1950, inclusive, was an employee of the Air Force assigned to Andrew as his secretary. As an accommodation to him she on occasion took dictation of his personal correspondence and wrote personal letters for him. Some of this correspondence related to his personal financial transactions but about seventy-five per cent of the correspondence did not concern business. Beginning about 1919 Andrew made loans to various individuals. He made one such loan in that year. He kept a record of the loans in a book. In 1932 Andrew made a loan to the Officers Club at Randolph Field. In 1941 he made a loan to finance the club at Hickam Field. In 1945 Andrew had three loans outstanding; in 1946 he had four loans on his book; in 1947 four loans; in 1948 he had no new loans; in 1949 he had one loan; and in 1950 he had two new loans. The majority of these loans were on real estate secured by deeds of trust. Some of the loans were made to acquaintances and others to persons who approached Andrew. On occasion Andrew borrowed *301 money from lending institutions and once from his daughter-in-law which he used to relend. He did not keep a separate fund for lending purposes nor did he have an office for the conduct of any business of a private nature. Andrew was not in the business of lending money in 1950. Ultimate Finding The loss in question was a non-business bad debt. Opinion The fact of the loss and that it resulted from a bad debt is within the area of agreement between the parties. The only question to be answered is whether or not the debt was proximately related to Andrew's trade or business. To be so related, it would have to be established by the evidence that he was in the business of money lending. This is essentially a fact question. We think the record falls far short of showing that such was the fact. To be sure, Andrew made loans from time to time over the years and conducted some correspondence with reference to the transactions. In our opinion, however, that is not enough to put him in the money lending business. The debt was a non-business bad debt. Decision will be entered under Rule 50.